IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEFFREY RIVERS, as the Administrator of the Estate of Heather Rivers,**<br>　　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**TRINITY CHE, and**<br>**MERCY SEPA,**<br>　　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 18-4343** |

DuBois, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　March 4, 2019

# M E M O R A N D U M

## I.　　INTRODUCTION

In this employment discrimination case, plaintiff Jeffrey Rivers, suing as administrator of the estate of Heather Rivers ("Ms. Rivers"), claims that Ms. Rivers was subject to unlawful employment practices after she was diagnosed with leukemia. In Plaintiff's Amended Civil Action Complaint, plaintiff asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, against defendants Trinity Health Corporation and Mercy Health System of Southeastern Pennsylvania (collectively, "defendants").[1] Presently before the Court is defendants' Partial Motion to Dismiss Plaintiff's Amended Civil Action Complaint. For the reasons that follow, the Motion is granted in part and denied in part.

## II.　　BACKGROUND

Ms. Rivers began her employment with defendants on or around June 2011. Am. Compl. ¶ 11. During the period at issue, she was employed as a "BCPI Navigator." Am. Compl. ¶¶ 11, 36. Her duties included "developing and maintaining relationships with patients and their

---

[1] Defendants state that Trinity Health Corporation and Mercy Health System of Southeastern Pennsylvania are incorrectly named in the Amended Complaint as Trinity CHE and Mercy SEPA, respectively.

families from admission to discharge and post discharge care to ensure that patients compliance [sic] with their assigned plans of care." *Id*. ¶¶ 11–12.

On March 10, 2017, Ms. Rivers was diagnosed with leukemia. *Id*. ¶ 15. Prior to her diagnosis, Ms. Rivers had worked "in a hospital setting." *Id*. ¶ 15. However, during her ensuing chemotherapy treatment, her physician "deemed that she was able to perform the essential functions of her position, but required that Ms. Rivers perform her job duties remotely, outside of the hospital setting." *Id* ¶ 16. On March 30, 2017, Ms. Rivers informed defendants of her illness and medical limitations and requested to perform her duties remotely. *Id*. ¶ 18. "By April 4, 2017, Ms. Rivers had completed all necessary documentation and submitted the medical documentation in support of her request for a reasonable accommodation." *Id*. ¶ 19.

On April 6, 2017, Ms. Rivers was informed that she would be able to maintain her position and regular job functions while working remotely. *Id*. ¶ 22. However, on April 28, 2017, she was informed that she would only be offered part-time telework. *Id*. ¶ 23.

At some point thereafter, defendants agreed that Ms. Rivers would "perform her regular BCIP [sic] duties, full time, remotely for a 30 day trial period, commencing on May 8, 2017." *Id*. ¶ 24. However, on her first day working remotely, she received an email from her supervisor, Anne Konowal, informing her that "her job duties were being altered" and she "would no longer be permitted to maintain her case load, but would now have to accept assignments from her co-workers and non-managers." *Id*. ¶ 25. Konowal also "imposed a new job requirement that Ms. Rivers keep an activity log for work she completed." *Id*. ¶ 27.

Despite requesting work, Ms. Rivers did not receive any assignments that day. *Id*. ¶ 28. Three days later, on May 11, 2017, Ms. Rivers received a revised job description which

"included reduced job duties" and "required her to perform duties that no other Nurse Navigator had to perform." *Id.* ¶ 29–30.

During a May 16, 2017 conference call clarifying Ms. Rivers' new duties, she "was informed if she did not accept [her new duties] unconditionally[,] the 30 day trial period would be immediately terminated, and that she would be required to go on unpaid FMLA leave." *Id.* ¶ 32. In response, Ms. Rivers "filed multiple internal complaints with management and human resources."[2] *Id.* ¶ 34. Ms. Rivers was on unpaid leave until her termination on September 14, 2017. *Id.* ¶¶ 35–36.

Plaintiff filed the Complaint on October 9, 2018, and defendants filed a partial motion to dismiss on December 24, 2018. Plaintiff filed the Amended Complaint on January 8, 2019, asserting claims[3] under the ADA (Count I) and the FMLA (Count II). In the Amended Complaint, plaintiff seeks declaratory and injunctive relief; compensatory, punitive, and liquidated damages; and attorneys' fees. Defendants filed a partial motion to dismiss on January 23, 2018, seeking (1) to dismiss plaintiff's claims for harassment and disparate impact under the ADA and "pattern or practice" of discrimination under the FMLA, (2) to strike plaintiff's demands for punitive damages for the retaliation claim under the ADA and for punitive damages and damages related to "mental anguish" and "disruption of her personal and professional life" for claims under the FMLA, and (3) an award of attorneys' fees. Plaintiff responded on February 6, 2019; defendants filed a reply on February 18, 2019. The Motion is thus ripe for review.

---

[2] Plaintiff does not state whether Ms. Rivers accepted the 30-day trial period or if she was immediately placed on unpaid FMLA leave.
[3] In the Amended Complaint, plaintiff does not explicitly list the claims brought under the two causes of action, the ADA (Count I) and the FMLA (Count II). Defendants construe the Amended Complaint to allege claims of "disability discrimination, harassment, disparate impact, failure to accommodate and retaliation under the ADA and a claim under the FMLA." Defs.' Opp'n 2. For the purposes of deciding this motion, the Court need only address those claims raised by defendants' Motion.

## III. LEGAL STANDARD

"The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint." *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

### A. ADA Disability Harassment and Disparate Impact

Defendants assert that plaintiff failed to plead facts sufficient to establish a *prima facie* case of ADA disability harassment and disparate impact. Mem. L. Supp. Defs.' Mot. To Dismiss ("Defs.' Mem. L.") 1. For the reasons that follow, the Court grants defendants' Motion with respect to these claims.

### i. Disability Harassment

Hostile work environment claims "are designed for work environments characterized by an excess of discriminatory ridicule or other intimidating behavior." *See Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 941 (3d Cir. 2009). Defendants argue that plaintiff's disability harassment claim must be dismissed because plaintiff has not plausibly pled a claim of disability-based hostile work environment. Defs.' Mem. L. 5–6. Plaintiff responds that he has alleged that defendants engaged in harassing and discriminatory behavior against Ms. Rivers "by continuing to altering [sic] her position, and duties, and failing to provide her with the requested and agreed upon accommodation." Pl.'s Opp'n Defs.' Partial Mot. To Dismiss ("Pl's Opp'n") 9.[4]

Plaintiff's allegations of harassment, which rely primarily on Ms. Rivers' changes in job assignments, do not plausibly allege a work environment "characterized by an excess of discriminatory ridicule or other intimidating behavior." *See Sgro*, 331 F. App'x at 941 (holding allegations that plaintiffs "were given demeaning job assignments that were incommensurate with their experiences and abilities . . . [are] not the type of harassment or intimidation relevant to a hostile work environment claim"). Thus, plaintiff's ADA claim of disability harassment is dismissed without prejudice.

### ii. Disparate Impact

"In order to establish a *prima facie* case of disparate impact discrimination, a plaintiff is required to demonstrate that application of a facially neutral standard has resulted in a significantly discriminatory . . . pattern." *Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J.*, 940 F.2d 792, 798 (3d Cir. 1991).

---

[4] Plaintiff did not number the pages in his Response. The Court cites to the pagination of the document as shown on ECF No. 12.

Defendants contend that plaintiff's claim of disparate impact discrimination under the ADA should be dismissed because "plaintiff has not identified any facially neutral policy in the Amended Complaint." Defs.' Mem. L. 7. Plaintiff disagrees, contending that he sufficiently avers a facially neutral policy through his assertion in paragraph 19 of the Amended Complaint. Pl.'s Opp'n 12. That paragraph reads: "By April 4, 2107, Ms. Rivers had completed all necessary documentation and submitted the medical documentation in support of her request for a reasonable accommodation." Am. Compl. ¶ 19. Nowhere in this paragraph does plaintiff allege the existence of any policy. Courts have held that the complaint must allege the facially neutral policy with specificity. *See, e.g.*, *Craig v. Thomas Jefferson Univ.*, No. 08-4165, 2009 WL 2038147, at *8 (E.D. Pa. July 7, 2009) (dismissing disparate impact claim where plaintiff "cannot point to a specific policy of defendant's"). Thus, in the absence of an allegation of the existence of a policy, plaintiff's ADA claim of disparate impact is dismissed without prejudice.

### B. FMLA "Pattern or Practice" of Discrimination Claim

Defendants contend that "Plaintiff has pled no facts related to any other individuals such that this Court could plausibly infer any systemic 'pattern and practice' [of discrimination] on the part of Defendants." Defs.' Mem. L. 8. Plaintiff states that he "is not presenting a pattern or practice claim as asserted by Defendant" and concedes that "[a] pattern-or-practice claim is not available to individual plaintiffs." Pl.'s Opp'n 13. To the extent that plaintiff alleges a "pattern or practice" of discrimination claim under the FMLA, plaintiff's claim is dismissed with prejudice.

### C. Punitive Damages for ADA Retaliation Claim

Defendants argue "plaintiff's demand for punitive damages as a remedy for her [sic] ADA retaliation claim should be stricken because it is well established that it is not an available

remedy." Defs.' Mem. L. 8–9.  Plaintiff responds with a general standard for punitive damages but does not address defendants' argument that punitive damages are not recoverable in ADA retaliation claims.  "[C]ourts in this District have consistently ruled that punitive damages are not available for ADA retaliation claims."  *Holmes v. Am. Heritage Fed. Credit Union*, No. 18-4418, 2019 WL 954996, at *5 (E.D. Pa. Feb. 27, 2019) (DuBois, J.).  Accordingly, plaintiff's demand for punitive damages as a remedy for the ADA retaliation claim is stricken.

### D.  Punitive and Mental Anguish Damages for FMLA Claims

Defendants state that plaintiff seeks punitive damages and damages related to "mental anguish" and "disruption of her personal and professional life" although it is "well established that such remedies are not available under the FMLA."  Defs.' Mem. L. 9–10.  In response, plaintiff only asserts that "Plaintiff does not seek [n]on-recoverable damages under the FMLA."  Pl.'s Opp'n 15.

Defendants are correct that punitive damages and damages related to "mental anguish" and "disruption of [] personal and professional life" are not available under the FMLA.  *See Holmes*, 2019 WL 954996 at *5 ("Punitive damages are not available under the FMLA."); *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 740 (2003) ("[T]he damages recoverable [under the FMLA] are strictly defined and measured by actual monetary losses.").  Thus, to the extent that plaintiff demands punitive damages and damages related to "mental anguish" and "disruption of [] personal and professional life" as a remedy for the FMLA claims, these demands are stricken.

### E.  Award of Attorneys' Fees

Defendants argue that plaintiff's Amended Complaint "added no new additional facts . . . to make [the hostile work environment or disability discrimination claims] more plausible," and

7

that plaintiff "continues to seek damages which her [sic] counsel is well-aware are not recoverable under the ADA or FMLA." Plaintiff claims to have amended the claims in good faith and "eliminated some of Defendant's [sic] prior objectionable language from their [sic] Complaint." Pl.'s Opp'n 16–17.

An award of attorneys' fees for the cost of the motion would only be appropriate in the "'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010), *as amended* (Dec. 7, 2010). The Court concludes that plaintiff's amending of the Complaint does not amount to such an "exceptional circumstance." Consequently, that part of defendants' motion seeking attorneys' fees is denied.

## V. CONCLUSION

For the reasons stated above, defendants' partial motion to dismiss is granted in part and denied in part. That part of defendants' motion seeking to dismiss plaintiff's claims for harassment and disparate impact under the ADA is granted, and those claims are dismissed without prejudice. That part of defendants' motion seeking to dismiss plaintiff's "pattern or practice" of discrimination claim under the FMLA is granted and that claim is dismissed with prejudice. That part of defendants' motion to strike plaintiff's demands for punitive damages for retaliation under the ADA and for punitive damages and damages related to "mental anguish" and "disruption of her personal and professional life" under the FMLA is granted, and those demands are stricken. Finally, that part of defendants' motion seeking an award of attorneys' fees is denied.

An appropriate Order follows.